BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Counsel for Ueno-Shokai Co., Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CENTRIC BRANDS INC. *et al.*,<br><br>Debtors. | Chapter 11<br>Case No. 20-22637 (SHL) |

## LIMITED OBJECTION TO PLAN OF REORGANIZATION

Ueno-Shokai Co., Ltd. ("Ueno-Shokai"), by and through its undersigned counsel, hereby submits this limited objection to the Third Amended Joint Chapter 11 Plan of Reorganization of Centric Brands Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan") filed by Centric Brands Inc. and affiliated debtors ("Debtors"). Ueno-Shokai objects to the extent the Plan purports to include certain trademark proceedings (the "Trademark Proceedings") in the discharge injunction (the "Discharge") set forth in the Plan.

## BACKGROUND

1. Ueno-Shokai is a leading apparel retailer and holds registrations for the trademark AVIREX in many countries.[1] Centric Brands Holding LLC ("Centric Holding"), a debtor in

---

[1] Ueno-Shokai Co., Ltd. owns registrations for AVIREX in at least Mexico, Belarus, Estonia, Latvia, Lithuania, Russia, Ukraine, Israel, Morocco, Tunisia, China, Hong Kong, Japan, South Korea, Cambodia, Myanmar, Laos, Malaysia, Macao, Philippines, Bhutan, Pakistan, Sri Lanka, Kazakhstan, Tajikistan, Singapore, India, Indonesia, Taiwan, Vietnam, Australia, and New Zealand.

Debtors' chapter 11 cases, owns trademark registrations for the AVIREX mark in the United States and Canada.

2. On July 13, 2017, Ueno-Shokai applied to register the trademark AVIREX in the United States in class 25 on an intent-to-use basis. (U.S. App. Ser. No. 87526585.) The examining attorney initially refused registration on the basis of a likelihood of confusion with U.S. Trademark Registration Nos. 1291156 (AVIREX in class 25), 2176570 (AVIREX in class 18), and 3764733 (AVIREX in class 25), all owned by KVZ International Ltd. of the British Virgin Islands. These U.S. trademark registrations were later assigned to Centric Holding.

3. On October 3, 2018, Ueno-Shokai filed a Petition for Cancellation of U.S. Trademark Registration Nos. 1291156, 2176570, and 3764733 in the United States Trademark Trial and Appeal Board ("TTAB") (Cancellation No. 92069741 (the "TTAB Proceeding")) on the grounds of nonuse, abandonment, and fraud. Ueno-Shokai instructed Stikeman Elliot LLP to initiate a similar nonuse cancellation proceeding in Canada on its behalf against the AVIREX registration in Canada (Section 45 Proceeding Against CIPO Registration No. TMA423520) (the "CIPO Proceeding", and together with the TTAB Proceeding, the "Trademark Proceedings").

4. The Trademark Proceedings were initiated prior to the Debtors' bankruptcy filing. In the TTAB Proceeding, the parties were in discovery prepetition, and Ueno-Shokai was also defending against an opposition brought by Centric Holding regarding Ueno-Shokai's application to register AVIREX in the United States. The opposition proceeding was consolidated with the cancellation proceeding by the TTAB, and the Opposition Proceeding (Opposition No. 91250907) is now the lead case in the TTAB Proceeding. In the CIPO Proceeding, the case was fully submitted and the parties were awaiting a hearing date. Centric

Holding has filed a motion to stay the TTAB Proceeding in view of Debtors' chapter 11 filing, though the TTAB has not yet taken any action with respect to that motion. (16 TTABVUE.)[2]

5. On May 18, 2020, the above-captioned cases were commenced and are being jointly administered.[3] On June 22, 2020, Centric Holding filed its Schedule of Assets and Liabilities and identified (1) the trademarks at issue in the Trademark Proceedings as assets of Centric Holding, and (2) the Trademark Proceedings as nonpriority creditors with contingent, unliquidated and disputed claims.[4] On June 23, 2020, Centric Holding filed its Statement of Financial Affairs and identified the Trademark Proceedings as legal actions in which Centric Holding was involved.[5]

6. On July 24, 2020, Debtors filed the Plan.[6] The Plan classifies holders of claims and interests into several classes, and specifically classifies all general unsecured claims in Class 6.[7] The Plan also has expansive language governing the discharge of claims against the Debtors (as defined, the "Discharge"). It provides in relevant part that the treatment provided in the Plan shall be "in complete satisfaction, discharge and release . . . of Claims . . . Interests, and Causes of Action of any nature whatsoever . . . against . . . the Debtors or any of their assets or properties . . . ."[8]

---

[2] Ueno-Shokai did not oppose the motion to stay because, under the Trademark Trial and Appeal Board Manual of Procedure, the TTAB must suspend proceedings upon learning that the defendant has filed for bankruptcy and has no discretion in this matter. (See TTAB Manual of Procedure section 510.03(a) ("The Board will issue an order suspending proceedings if it comes to the attention of the Board that the defendant has filed a petition for bankruptcy."))

[3] All references to ECF filings are to the above-captioned docket.

[4] See Schedule of Assets and Liabilities for Centric Brands Holding LLC, ECF No. 230, at paras. 60 (page 28, 31), 3.95, 3.96 (page 63).

[5] See Statement of Financial Affairs for Centric Brands Holding LLC, ECF No. 291, at 2.

[6] See ECF No. 417.

[7] See ECF No. 417 at 31-32, Article III.

[8] See id. at 56-57, Article VIII(B). The full language of the Discharge is as follows: "Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors),

7.	On or around July 24, 2020, the Debtors sent Ueno-Shokai through their counsel ballots (the "Ballots") to vote to accept or reject the Plan due to Ueno-Shokai's role in the TTAB Proceeding and CIPO Proceeding. The Ballots designate "Avirex TTAB Proceeding No. 91250907" and "Avirex CIPO Registration No. TMA423520" each as the holder of a Class 6 general unsecured claim against Centric Holding in the amount of $1.00.

## LIMITED OBJECTION

8.	Ueno-Shokai objects to confirmation of the Plan under Section 1129 of the Bankruptcy Code to the extent the Plan purports to extinguish or alter any of Ueno-Shokai's rights to pursue the relief sought in the Trademark Proceedings. Section 1129 provides that the court shall confirm a plan of reorganization only if, among other things, "the plan complies with the applicable provisions of [the Bankruptcy Code] . . ..."[9] The provision of the Bankruptcy Code applicable to the Discharge is Section 1141(d), which sets forth that, except as provided for elsewhere in subsection (d), in the plan of reorganization, or in the order confirming the plan of reorganization, the confirmation of the plan "discharges the debtor from any *debt* that arose before the date of such confirmation," as well as other debt set out in specific subsections of

---

Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a proof of claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is allowed pursuant to section 502 of the Bankruptcy Code; or (c) the holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date with respect to a Claim that is Unimpaired by the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date."
[9] 11 U.S.C. § 1129(a)(1).

4

Section 502 of the Bankruptcy Code, notwithstanding whether the holder of a claim files a proof of claim, such claim is allowed, or such claimholder accepts the plan.[10]

9. Section 101(12) of the Bankruptcy Code defines "debt" as "liability on a claim", and Section 101(5) defines "claim" as "(A) *right to payment*, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance *if such breach gives rise to a right to payment*, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."[11]

10. Considering that "claim" is defined in the Bankruptcy Code as a right to payment or a right to an equitable remedy giving rise to a right to payment, courts have found that non-monetary prepetition obligations of a debtor do not constitute "claims" dischargeable in bankruptcy. *See In re Gacharna*, 480 B.R. 909 (Bankr. N.D. Ill. 2012) (non-monetary obligations arising from settlement of trade secrets misappropriation action did not give rise to a "claim" in settling party's bankruptcy case and were thus not dischargeable prepetition debt); *In re LaFemina*, No. 14-43362, 2017 WL 4404254 (Bankr. E.D.N.Y. Sept. 30, 2017) (right to equitable relief for breach of a covenant not to compete is not a "claim" and thus is not dischargeable in bankruptcy); *In re Annabel*, 263 B.R. 19 (Bankr. N.D.N.Y. 2001) (same).

11. Ueno-Shokai's participation in the Trademark Proceedings does not give rise to a "claim" against Debtors dischargeable under the Plan. In the Trademark Proceedings, Ueno-Shokai does not seek money damages or monetary relief, and these actions do not otherwise endow it with a right to payment. Nor could they—neither the TTAB nor the Canadian

---

[10] 11 U.S.C. § 1141(d)(1) (emphasis added).
[11] 11 U.S.C. § 101(12), (5) (emphasis added).

5

Trademarks Registrar is authorized by its respective governing legislation to issue monetary relief to a claimant and may only adjudicate the issues of a party's right to register a trademark or to maintain a trademark on the register; they cannot award monetary damages of any kind or determine claims of trademark infringement or unfair competition. *General Mills Inc. v. Fage Dairy Processing Industry SA*, 100 USPQ2d 1584, 1591 (TTAB 2011) (TTAB has no authority to determine the right to use a mark, or the broader questions of infringement, unfair competition, damages or injunctive relief); *McDermott v. San Francisco Women's Motorcycle Contingent*, 81 USPQ2d 1212, 1216 (TTAB 2006) ("[T]he Board's jurisdiction is limited to determining whether trademark registrations should issue or whether registrations should be maintained; it does not have authority to determine whether a party has engaged in criminal or civil wrongdoings."), *aff'd,* 240 F. App'x 865 (Fed. Cir. July 11, 2007), *cert. denied,*, 552 U.S. 1109 (2008); *Anheuser-Busch, Inc. v. Carling O'Keefe Breweries of Canada Ltd. et al.* (1982) 69 C.P.R. (2d) 136 (F.C.A.) at 142 (the Canadian Registrar of Trademarks, as a creature of statute, has no inherent jurisdiction, and all of its authority must be found in either the Trademarks Act or the related Trademark Regulations). Nothing in the Canadian *Trademarks Act*, RSC 1985, c T-13, § 45, or the *Trademark Regulations*, SOR/2018-227, §§ 67-74, allows the Registrar to grant costs in connection with summary cancellation proceedings. Thus, in the Trademark Proceedings, Debtors at most owe contingent non-monetary obligations respecting the trademark registrations at issue that are not subject to the discharge provisions of the Plan.[12]

12.    Nor does Ueno-Shokai hold an "Interest" or a "Cause of Action" subject to the Discharge in the Plan. Section 1141(d) makes clear that dischargeable "interests" are those held

---

[12] Likewise, because Ueno-Shokai does not hold a "claim" in Debtors' bankruptcy, it is not a "creditor", which the Code defines as an entity holding a claim. *See* 11 U.S.C. § 101(10).

by an equity security holder or general partner; Ueno-Shokai is neither.[13] Similarly, the Trademark Proceedings are not "Causes of Action" dischargeable in bankruptcy. *See Pan American School of Travel Inc.*, 47 B.R. 242 (Bankr. S.D.N.Y. 1985) (discharge in chapter 11 did not impact trademark infringement lawsuit seeking injunction against further alleged infringement, which was "not an attempt to collect a pre-petition debt"); *McKesson & Robbins v. Leonard James Co.*, 129 F.2d 563 (C.C.P.A. 1942) (finding that the discharge of the debtor would have "no effect whatever" on a proceeding to cancel debtor's trademarks).

13. Given that the relief sought in the Trademark Proceedings is non-monetary and does not qualify as a "claim" or "interest," then to the extent the Plan purports to extinguish or alter Ueno-Shokai's rights in the Trademark Proceedings, the Plan does not comply with Section 1141 of the Bankruptcy Code and thus is not confirmable under Section 1129(a)(1) of the Code.

14. In addition, to the extent the Discharge purports to bar Ueno-Shokai from pursuing the Trademark Proceedings, the Plan runs afoul of Section 1129(a)(3) of the Code, which requires that the plan be proposed "not by any means forbidden by law,"[14] and 28 U.S.C. § 959(b), which requires that a debtor in possession such as the Debtors "shall manage and operate the property in [its] possession . . . according to the requirements of the valid laws of the State in which such property is situated . . . ."[15] Trademark rights in the United States and Canada flow from use rather than registration, and nonuse of a mark renders a registration susceptible to cancellation on the grounds of nonuse. The Lanham Act provides that a mark shall be deemed abandoned "when its use has been discontinued with intent not to resume such

---

[13] *See* 11 U.S.C. § 1141(d). In addition, to the extent the Plan purports for the Discharge to operate as an injunction against the continuation of the Trademark Proceedings, it would be broader than the scope of relief permitted in Section 524 of the Bankruptcy Code. Section 524(a) of the Code provides that a discharge operates as an injunction against the continuation of an action to collect, recover or offset "debt", which the Trademark Proceedings do not purport to do.
[14] *See* 11 U.S.C. § 1129(a)(3).
[15] *See* 28 U.S.C. § 959(b).

use," with nonuse for three consecutive years being "prima facie evidence of abandonment."[16] It would be contrary to such law for this Court to bar Ueno-Shokai from seeking to remove Centric Holding's U.S. and Canadian trademark registrations from the respective registers without the appropriate authority making a final determination on the questions at issue in the Trademark Proceedings, namely, whether the marks were abandoned due to nonuse or maintained due to fraud on the U.S. Patent and Trademark Office.

15. Given the Debtors' attempt to treat the Trademark Proceedings as giving rise to claims and the breadth of the Discharge sought in the Plan, Ueno-Shokai asserts this limited objection and reservation of rights to the extent that the Discharge affects Ueno-Shokai's rights to pursue the Trademark Proceedings. To the extent the Court issues the relief requested in the Plan, Ueno-Shokai respectfully requests that this Court include a finding that such relief does not extinguish or alter Ueno-Shokai's rights in the Trademark Proceedings in any matter whatsoever.

**WHEREFORE**, for the foregoing reasons, Ueno-Shokai asserts a limited objection and reservation of rights to the Discharge requested in the Plan.

---

[16] 15 U.S.C. § 1127.

Dated: August 14, 2020
      New York, New York

By:   */s/ Ferve Khan*

BAKER & HOSTETLER LLP

45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Robert B.G. Horowitz
Email: rhorowitz@bakerlaw.com
Ferve E. Khan
Email: fkhan@bakerlaw.com

Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104
Telephone: 215-568-3100
Facsimile: 215-568-3439
Lesley Grossberg
Email: lgrossberg@bakerlaw.com

*Counsel for Ueno-Shokai Co., Ltd.*